**STATE of Missouri, Respondent,**

v.

**Shaun Alexander RUSHING, Appellant.**

No. 78838.

Supreme Court of Missouri,
En Banc.

Nov. 19, 1996.

Rehearing Denied Dec. 17, 1996.

Gary E. Brotherton, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Christine M. Blegen, Assistant Attorney General, Jefferson City, for respondent.

HOLSTEIN, Chief Justice.

Shaun Rushing was convicted and sentenced to five years in prison for possession of a controlled substance with intent to distribute in violation of § 195.211, RSMo 1994. The trial court overruled Rushing's motion to suppress the evidence of cocaine seized both before his arrest during a "patdown" search and after arrest. Rushing appealed his conviction. The Missouri Court of Appeals, Eastern District, believing the case to present a question of general interest and importance, transferred the case to this Court pursuant to article V, § 10, of the Missouri Constitution. The decision of the trial court is affirmed.

## I.

On October 12, 1994, Randall Rhodes, the chief juvenile officer for the 32nd Judicial Circuit, was driving on South Lorimier Street in Cape Girardeau when he encountered a car blocking his lane. The car was sitting in front of an apartment building known as "brick city," an area that Rhodes characterized as being known for drug trafficking and gang activity. Rhodes saw a man, whom he later identified as the defendant, Rushing, standing next to the driver's side door of the car. As Rhodes slowly drove around the car, he observed Rushing look in all directions, reach into his front pants at the belt area, and then reach into the car as though he had something in his hand. Then Rhodes saw the driver of the car hand something to Rushing, who appeared to put the object in his pants pocket.

Based on his training and experience as a juvenile officer, Rhodes believed that he had witnessed a drug transaction. He went to the police station and reported the incident to Rick Price, a narcotics officer. Officer Price went to the area of the suspected drug transaction with Rhodes. Rhodes recognized Rushing on the front porch of 216 South Lorimier Street and pointed him out to Officer Price. Officer Price testified that he had previously executed search warrants at both 212 and 216 South Lorimier for drugs.

They parked the car, and Rhodes and Officer Price approached Rushing. Two other men were with Rushing. Officer Price identified himself as a police officer. Officer Price told the men that he had received information that Rushing was dealing drugs. Rushing denied this allegation. The other men left the porch and departed in different directions.

Officer Price testified that gang graffiti was present in the neighborhood, which caused him concern for his safety. Officer Price stated that, out of a concern for his safety and the safety of Mr. Rhodes, he conducted a patdown for "weapons and contraband." During the patdown, Officer Price ran his hand down Rushing's front pants pocket and felt a tubular item. Officer Price testified that he immediately thought that the item was a tubular plastic "Life Saver Hole candy container, which is a common container used by crack dealers to carry their crack cocaine in." Officer Price testified that he thought the container held crack cocaine. He based this belief on the information received from Rhodes, the area they were in, and his previous training and experience. Officer Price further explained that in his experience drugs are commonly carried in medicine bottles, "Life Saver Hole" candy

containers, plastic baggies, film canisters and other similar types of containers that are easily concealed in a pocket and are easily opened for removal of items.

Officer Price then removed the item from Rushing's pocket and discovered it to be a cylindrical plastic medicine bottle, two and three-fourths inches long, having a diameter of one inch.[1] The bottle contained ten rocks of crack cocaine and some rice. Rushing was then arrested and taken to police headquarters, where the police found a wadded dollar bill containing more crack cocaine in the watch pocket of Rushing's pants.

Rushing moved to suppress the introduction of the cocaine into evidence. After conducting a hearing, the trial court denied the motion.

## II.

An investigative stop is permitted under the Fourth Amendment when a law enforcement officer is able to point to specific and articulable facts which, taken with rational inference from those facts, create a reasonable suspicion that a person has or is about to commit a crime. *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1879–80, 20 L.Ed.2d 889 (1968). Once a valid stop has been made, police may pat a suspect's outer clothing if they have a reasonable, particularized suspicion that the suspect is armed. *Id.* at 27, 88 S.Ct. at 1883. "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence...." *Adams v. Williams,* 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972).

Rushing does not challenge the trial court's finding that the police were justified under *Terry* in stopping him and frisking him for weapons. Rather, Rushing contends that in seizing the pill bottle containing cocaine, Officer Price exceeded the scope of the limited intrusion authorized by *Terry.* Thus, the dispositive question is whether Officer Price was acting within the lawful bounds marked by *Terry* at the time he gained probable cause to believe that the item in Rushing's pants pocket contained contraband.

In *Minnesota v. Dickerson,* 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), the Supreme Court approved the "plain-feel" exception to the warrant requirement. The court reasoned that if "a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified...." *Id.* at 375–76, 113 S.Ct. at 2137. The court concluded that the search in *Dickerson* exceeded the scope of *Terry* because the incriminating character of the object felt was not immediately apparent to the officer. *Id.* at 379, 113 S.Ct. at 2139. The court emphasized that "the officer determined that the lump was contraband only after 'squeezing, sliding and otherwise manipulating the contents of the defendant's pocket'—a pocket which the officer already knew contained no weapon." *Id.* at 378, 113 S.Ct. at 2138 (quoting *State v. Dickerson,* 481 N.W.2d 840, 844 (Minn.1992)).

Conversely, in the present case the trial court overruled the motion to suppress because it found that the incriminating character of the object felt was immediately apparent to Officer Price. In reviewing the trial court's denial of the motion to suppress, we look only to determine whether the evidence was sufficient to support the ruling. *State v. Burkhardt,* 795 S.W.2d 399, 404 (Mo. banc 1990). The facts and reasonable inferences arising therefrom are to be stated favorably to the order challenged on appeal. *State v. Blair,* 691 S.W.2d 259, 260 (Mo. banc 1985), *cert. dismissed,* 480 U.S. 698, 107 S.Ct. 1596, 94 L.Ed.2d 678 (1987). It is not this court's province to substitute its discretion for that of the trial court. *Burkhardt,* 795 S.W.2d at 404.

According to his testimony, Officer Price's first impression was that the object was a container of crack cocaine; there was no further manipulation of the object. Officer

---

1. Defendant does not contend, and nothing in the record suggests, that the size and shape of the medicine bottle seized is different from a "Life Saver Hole" candy container.

Price testified that upon feeling the object, he "immediately thought that it was ... a Life Saver Hole candy container, which is a common container used by crack dealers to carry their crack cocaine in." He believed that the container held crack cocaine because of the surrounding circumstances and his training and experience as a police officer. Officer Price testified: "Because of the information I received from Officer Rhodes, the area we were in, and from my previous training and experiences in arresting crack dealers, [I knew] that that's what they carry their crack cocaine in." In ruling on the motion to suppress, the trial court also considered a list of cocaine arrests and seizures of the Cape Girardeau Police Department, which was prepared by Officer Price and admitted into evidence at the suppression hearing. The list consisted of the complaint or report number and the type of container in which the crack cocaine was found. This evidence, taken as a whole, is sufficient to support the trial court's finding that at the moment Officer Price felt the item, it was immediately identifiable as contraband and was, therefore, subject to seizure.

 The Supreme Court has equated the requirement that an item in plain view or feel be "immediately apparent" as contraband or other evidence of a crime with the probable cause standard. *Minnesota v. Dickerson*, 508 U.S. 366, 376, 113 S.Ct. 2130, 2137, 124 L.Ed.2d 334 (1993); *Arizona v. Hicks*, 480 U.S. 321, 326, 107 S.Ct. 1149, 1153, 94 L.Ed.2d 347 (1987); *Texas v. Brown*, 460 U.S. 730, 741–42, 103 S.Ct. 1535, 1542–43, 75 L.Ed.2d 502 (1983) (plurality opinion). Thus, to justify a seizure under the plain-feel doctrine, the officer must have probable cause to believe that the item felt is contraband. Probable cause exists when the facts and circumstances within the knowledge of the seizing officer are sufficient to warrant a person of reasonable caution to believe that the item may be contraband or other evidence of a crime. *Texas v. Brown*, 460 U.S. at 742, 103 S.Ct. at 1543 (plurality opinion); *State v. Hornbeck*, 492 S.W.2d at 802, 805 (Mo.1973). Relevant to this determination is the officer's factual knowledge, based on his law enforcement experience. *See Texas v. Brown*, 460 U.S. at 742–43, 103

S.Ct. at 1543–44 (plurality opinion). The facts recited above would lead a reasonable person to believe that drugs were present in the container felt by Officer Price. In sum, the following elements properly support a finding that Officer Price had probable cause to conclude that Rushing was carrying cocaine before he seized the container: 1) the officer's· feel of the object, 2) his knowledge of the suspicious transaction observed by Rhodes, 3) the reputation of the neighborhood as a drug trafficking area, and 4) his knowledge of commonly used drug containers.

There is sufficient evidence to support a finding of probable cause even though Officer Price felt the container rather than the cocaine itself. In the analogous plain-view context, a plurality of the United States Supreme Court in *Texas v. Brown* dismissed as "all but irrelevant" the officer's inability to see through the opaque fabric of a seized balloon believed to contain cocaine. *Id.* at 743, 103 S.Ct. at 1543–44. In determining that the officer had probable cause to seize the balloon, the *Brown* plurality relied on the officer's testimony that he was aware, both from previous narcotics arrests and from discussions with other officers, that balloons tied in the manner of the one possessed by the defendant were frequently used to carry narcotics. *Id.* at 742–43, 103 S.Ct. at 1543–44. Similarly, in the present case, Officer Price testified that, because of his training and experience, he knew that the type of container he felt was frequently used to carry cocaine. The distinctive character of the container itself revealed its probable contents to the trained officer. Thus, under the totality of the circumstances, the trial court did not err in finding that Officer Price had probable cause to believe that the container held cocaine before he put his hand into Rushing's pocket.

### III.

As discussed above, the Supreme Court's decision in *Dickerson* established that the plain-feel doctrine does not offend guarantees of the Fourth Amendment of the United States Constitution. Nevertheless, Rushing asks this Court to reject the plain-feel doc-

trine as violating article I, § 15 of the Missouri Constitution.

▇▇▇ Article I, § 15 of the Missouri Constitution provides that "the people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures...." This provision parallels the Fourth Amendment of the United States Constitution, which preserves "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures...." Provisions of our state constitution may be construed to provide more expansive protections than comparable federal constitutional provisions. However, the construction given to the Fourth Amendment of the federal constitution by the Supreme Court of the United States is strongly persuasive in construing the like section of our state constitution. *Star Square Auto Supply Co. v. Gerk*, 325 Mo. 968, 30 S.W.2d 447, 456 (1930). The state and federal constitutional protections from unreasonable searches and seizures are coextensive. *State v. Jones*, 865 S.W.2d 658, 660 (Mo. banc 1993).

▇▇▇ Despite its acceptance by the United States Supreme Court, Rushing invites this court to reject the plain-feel doctrine under our state constitution because, he argues, the doctrine blurs the limits of a *Terry* search. The invitation is declined. The plain-feel doctrine, within the narrow limits set by *Dickerson*, does not countenance even the slightest expansion of the *Terry* patdown beyond that which is required to search for weapons. Rather, the plain-feel doctrine provides that if an officer discovers what is immediately apparent as contraband during the limited search for weapons, he is not required to ignore it. The plain-feel doctrine neither expands the scope of *Terry* nor blurs its limits. It is merely a logical extension of the plain-view exception to the warrant requirement, which has long been accepted by Missouri courts as comporting with federal and state constitutional provisions. *See, e.g., State v. Blankenship*, 830 S.W.2d 1, 14 (Mo. banc 1992). No justification exists for expanding the protection of article I, § 15, beyond that provided by the Fourth Amendment.

## IV.

Finally, Rushing argues that the cocaine found wrapped in a dollar bill in his pocket following arrest should have been suppressed as the product of the supposedly illegal seizure prior to arrest. Because the original seizure of the medicine bottle containing cocaine is valid, the additional cocaine seized following the arrest is not the fruit of an illegal seizure.

## CONCLUSION

The judgment of the trial court is affirmed.

BENTON, PRICE, LIMBAUGH and ROBERTSON, JJ., concur.

COVINGTON, J., dissents in separate opinion filed.

WHITE, J., concurs in opinion of COVINGTON, J.

COVINGTON, Judge, dissenting.

I respectfully dissent. The question is whether the officer's tactile perception of the object gave him immediately, without further searching, probable cause to believe the object contained contraband. I disagree with the majority's conclusion that Officer Price had probable cause to search the defendant's pocket. My disagreement with the majority is simply one of where to strike the proper balance. I believe that the effect of the majority opinion is to reduce the probable cause standard to one of reasonable suspicion.

The majority relies on *Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (plurality opinion). Whether probable cause is required to invoke the plain-view doctrine, directly analogous to the plain-feel doctrine, was an issue left open in *Brown*. Later, however, in *Arizona v. Hicks*, a premises case, the United States Supreme Court held that probable cause is, in fact, required to invoke the plain-view doctrine. 480 U.S. 321, 326, 107 S.Ct. 1149, 1153, 94 L.Ed.2d 347 (1987). Justice Scalia, writing for the Court, explained:

Dispensing with the need for a warrant is worlds apart from permitting a lesser standard of *cause* for the seizure than a warrant would require, *i.e.*, the standard of probable cause. No reason is apparent why an object should routinely be seizable on lesser grounds, during an unrelated search and seizure, than would have been needed to obtain a warrant for that same object if it had been known to be on the premises.

*Id.* at 327, 107 S.Ct. at 1153–54.

In *Hicks,* police officers entered an apartment looking for a suspect in an apartment shooting. They seized weapons and a ski-mask. One of the officers noticed two sets of expensive stereo components that looked out of place. He recorded the serial numbers. In order to view the serial numbers, he moved some of the components. He reported the numbers to headquarters. Upon being told that the turntable was reported stolen, he seized the turntable. The Court held that moving the components to view the serial numbers constituted a search unrelated to the search for the shooter and the weapons. *Id.* at 325, 107 S.Ct. at 1152–53. A finding of probable cause was required to uphold the search of the stereo components. *Id.* at 326, 107 S.Ct. at 1153. The State conceded that the officer in *Hicks* had only reasonable suspicion to believe the components were stolen; therefore, the search was unconstitutional. *Id.*

Other jurisdictions have found similar searches to have exceeded the authority of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and *Minnesota v. Dickerson,* 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). In *Commonwealth v. Crowder,* the Kentucky Supreme Court invalidated a search under circumstances similar to the present case. 884 S.W.2d 649 (Ky. 1994). Crowder had been previously arrested in the same "hot drug area." The police had received a tip that if Crowder was in that area he would be dealing drugs. When Crowder saw the police watching him, he walked away. The officer stopped him, searched him, and felt what the officer described as "something like a small gumball." The officer also stated that it "felt like it may

have been a bindle of drugs." *Id.* at 650. The court stated that the search was invalid because the officer did not immediately recognize what he felt in Crowder's pocket as drugs. "The nature of the non-threatening contraband was not immediately apparent to [the] officer" when he was conducting the patdown search. *Id.* at 652.

Likewise, in *Commonwealth v. Stackfield,* an officer seized several zip-lock baggies after a patdown search. 438 Pa.Super. 88, 651 A.2d 558 (1994). The officer testified that he thought the bags felt like packaging materials that are often used for carrying drugs. The Pennsylvania Superior Court held that the search was invalid. "A zip-lock baggie is not per se contraband, although material contained in a zip-lock baggie may well be." *Id.* 651 A.2d at 562. See also *Campbell v. State,* 864 S.W.2d 223 (Tex.App.1993) ( "The incriminating character of a 35 millimeter film canister was not 'immediately apparent' under the facts before us to justify its seizure"). These cases, read together with *Arizona v. Hicks,* would seem to tip the scales in favor of finding a lack of probable cause.

The majority's reliance on *Texas v. Brown* is questionable in another respect; the majority extends *Brown* well beyond its facts. During a traffic stop a police officer saw Brown holding an uninflated, opaque, green party balloon tied off at the end. The balloon contained heroin. The Court held that the search was proper because the nature of the balloon as contraband was immediately apparent. *Id.* at 743, 103 S.Ct. at 1543–44. The balloon was in plain view; the officer did not have to search to find the contraband.

The facts of the present case are distinguishable. Officer Price testified that he first patted down the defendant for "weapons and contraband." The officer searched the defendant and felt the bottle in his front pants pocket. The officer testified that he "thought it was a Life Savers Holes candy container." Although he testified further that he knew this to be a container commonly used by drug dealers to carry crack, there is nothing distinctive about a candy container. The container was actually a prescription pill bottle, and it was impossible for him to discern what the bottle contained. The nature

of the bottle as contraband was not apparent to the officer until after he removed the bottle from the defendant's pocket. Put another way, the nature of the container as contraband was not immediately apparent to the officer.

Certainly there are factors that support affirmance in this case, those being the officer's information regarding defendant's drug activities and the officer's experience in narcotics enforcement. It would be difficult to disagree that Officer Price had reasonable suspicion that the defendant was carrying contraband. That suspicion, however, did not rise to the level of probable cause necessary for a valid search under *Dickerson's* plain-feel exception. Reasonable suspicion is not transformed into probable cause simply by relabeling.

The search of the defendant's pocket and seizure of the bottle exceeded the scope of authority of *Terry* and *Dickerson*. I would reverse.