**STATE of Missouri, Respondent,**

v.

**John A. GANTT, Appellant.**

**No. WD 60165.**

Missouri Court of Appeals, Western District.

Aug. 6, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 1, 2002.

Application for Transfer Denied Nov. 26, 2002.

Donald Wayne Petty, Liberty, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Philip M. Koppe, Assistant Attorney General, Kansas City, for Respondent.

PAUL M. SPINDEN, Judge.

John A. Gantt appeals the circuit court's judgment convicting him of possessing cocaine in violation of § 195.202, RSMo 2000. Gantt contends that the circuit court erred in not sustaining his motion to suppress the cocaine seized from him by the arresting officer and in permitting it to be admit-

ted into evidence. Gantt argues that the officer's search and seizure violated his rights under the Fourth Amendment to the United States Constitution. We affirm the circuit court's judgment.

Police officers seized the cocaine from Gantt on January 15, 2000, in Riverside after stopping the car that he was driving for a traffic violation. While investigating the violation, Officer Christopher A. Skinrood stood beside Gantt's car on the passenger side, and Officer Doug VanLeeuwen stood on the driver's side talking to Gantt. Skinrood saw a plastic bag protruding about an inch from the zipper area of Gantt's pants.[1] Skinrood told VanLeeuwen to get Gantt out of the car, and VanLeeuwen complied. As Gantt stepped out of the car, he pushed the bag into his pants and tried to zip his pants. VanLeeuwen ordered Gantt to move to the back of his car and to place his hands on the car's trunk lid. Skinrood asked Gantt whether he "had anything in his crotch." Gantt answered, "Nothing." Skinrood began a "pat down" to check, as he testified, for weapons. He felt a "lump" just below the waistline of Gantt's pants. Skinrood described the lump as "rough, . . . hard, pointy, . . . like pieces of something." Skinrood concluded that the pieces were either methamphetamine or "crack" cocaine, and he reached into the zipper area of Gantt's pants and pulled out a plastic bag. He asked Gantt what was in the bag, and Gantt admitted that it was "crack cocaine." Inside the bag were 11 pieces of crack cocaine, weighing a total of 2.75 grams.

In this appeal, Gantt asserts that Skinrood's search and seizure violated his constitutional rights "in that [Gantt's] person was searched without a warrant and without probable cause in a search which exceeded the scope of a permissible 'stop and frisk' search as permitted by the *Terry*[2] doctrine." In considering Gantt's point, our review of the circuit court's denial of his motion and admission of the seized drugs into evidence is limited to whether substantial evidence, considered in a light most favorable to the circuit court's ruling, supported the circuit court's decisions. *State v. Rousan,* 961 S.W.2d 831, 845 (Mo. banc 1998), *cert. denied,* 524 U.S. 961, 118 S.Ct. 2387, 141 L.Ed.2d 753 (1998). Our review of issues of law is *de novo. Id.*

■ To be lawful under the Fourth Amendment, governmental agents' searches and seizures must be reasonable. The United States Supreme Court generally has interpreted the reasonableness requirement to mean that a search must be based on probable cause and executed pursuant to a warrant. *See Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

■ Skinrood conducted his search without a warrant, and warrantless searches are presumptively invalid. *State v. Galazin,* 58 S.W.3d 500, 505 (Mo. banc

---

1. Gantt's attorney insisted at oral argument that Skinrood testified only that he "thought" he saw a plastic bag. Actually, Skinrood testified emphatically on direct examination that he saw a plastic bag. During cross examination, Gantt framed his questions in terms of what Skinrood *thought* that he saw, and Skinrood did not challenge Gantt's characterization. Nonetheless, even if Skinrood only *thought* that he saw a plastic bag, later developments verified that, indeed, Skinrood saw a plastic bag. Moreover, Gantt's conduct in concealing the bag and lying about its existence, and the bag's location—in a place commonly used to hide contraband—are what were significant and not the materials from which the bag was made.

2. Gantt is referring to the analysis employed by the United States Supreme Court in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

2001). To satisfy the Fourth Amendment, the state must establish that the search fit within one of the exceptions to the probable cause and warrant requirements. Among these exceptions are investigatory detentions, *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and seizure of items in plain view, *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

Our supreme court has instructed:

The proponent of [a motion to suppress evidence] has the burden of establishing that his constitutional rights were violated by the challenged search or seizure, *State v. Lingar*, 726 S.W.2d 728, 735 (Mo. banc 1987), *cert. denied*, 484 U.S. 872, 108 S.Ct. 206, 98 L.Ed.2d 157 (1987); however the burden is on the State to justify a warrantless search and to demonstrate that such falls within an exception to the warrant requirement, e.g. search of a stopped car on a highway. *State v. Epperson*, 571 S.W.2d 260, 263 (Mo. banc 1978), *cert. denied*, 442 U.S. 909, 99 S.Ct. 2820, 61 L.Ed.2d 274 (1979).

*State v. Burkhardt*, 795 S.W.2d 399, 404 (Mo. banc 1990).

The state asserts that Skinrood's warrantless search was justified because, when he first saw the plastic bag, it was in plain sight; hence, the "plain view doctrine" applied. In certain situations, police may seize, without a warrant, evidence that is in plain view. In *Horton v. California*, 496 U.S. 128, 136–37, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990), the United States Supreme Court has ruled that, for the state to justify its search under the plain view doctrine, it must prove that three conditions have been satisfied: (1) that police "did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed," *id.* at 136, 110 S.Ct. 2301; (2) that the search-

ing officer had a lawful right of access to the evidence itself, *id.* at 137, 110 S.Ct. 2301; and (3) that the incriminating character of the evidence seized was immediately apparent, *id.* at 136, 110 S.Ct. 2301.

■ We need not linger in determining whether the plain view doctrine justified Skinrood's search and seizure because Skinrood did not seize the bag at that point. He waited to do an investigatory frisk after refocusing the investigation from a traffic stop to an inquiry as to whether or not Gantt was carrying unlawful contraband. Based on Skinrood's observation of the bag, the officers had a sufficient basis for escalating the search. The bag's protrusion from Gantt's pants gave Skinrood "a new factual predicate for reasonable suspicion" to refocus the investigation and to prolong the detention. *State v. Lord*, 43 S.W.3d 888, 891 (Mo.App. 2001). When Gantt had stepped out of his car, he augmented the reasonable suspicion that Skinrood already had by shoving the bag further into his pants and by lying that he had nothing inside his pants.

Acting on Skinrood's reasonable suspicion that Gantt was hiding contraband in his pants, the officers acted reasonably as part of their refocused investigation to order Gantt out of his car and to frisk him for weapons. The United States Supreme Court recognized in *Terry* that the police must be free to pursue a "legitimate investigative function." 392 U.S. at 22, 88 S.Ct. 1868. The *Terry* court held that, in furtherance of that function, police may take reasonable steps to protect themselves by searching a suspect for weapons. *Id.* at 27, 88 S.Ct. 1868.

■ Skinrood acknowledged that he did not see a weapon on Gantt or have any more than a concern that Gantt possibly had a gun, but reasonableness is the issue: Would a reasonably prudent officer in

these circumstances have cause to be concerned for his or her safety and feel a need to frisk the suspect.

> The legality of a search ... "must be judged by the objective facts known to the seizing officers[.]" ... An investigatory search for weapons is valid where "the detaining officers has a particularized and objective basis for suspecting the particular person stopped of criminal activity." ... *United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 694, 66 L.Ed.2d 621 (1981).

*State v. Donohoe,* 770 S.W.2d 252, 257–58 (Mo.App.1989). As the United States Supreme Court said in *Terry,* an "officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.* The United States Supreme Court has also noted that in roadside encounters between police and suspects, such as the one that Skinrood and VanLeeuwen had with Gantt—those that go beyond mere traffic stops—"are especially hazardous, and that danger may arise from the *possible* presence of weapons[.]" *Michigan v. Long,* 463 U.S. 1032, 1049, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983) (emphasis added).

Under the totality of the circumstances, Skinrood had a sufficient justification for wanting to frisk Gantt for weapons before continuing the investigation that had been refocused from a mere traffic stop to consideration of a felony. He was relatively certain that Gantt was hiding contraband in the bag. Although he believed that the bag's content was more likely drugs than a weapon, that the bag contained a weapon was not an unreasonable concern. When Gantt lied about having nothing in his pants, Skinrood was particularly justified in his concern about the bag's content.

Moreover, Skinrood noticed that Gantt's appearance seemed peculiar as though he were under the influence of drugs or alcohol. This, in addition to being a night time encounter on the side of a highway, further justified Skinrood's frisk. *State v. Preston,* 861 S.W.2d 627, 631 (Mo.App. 1993). Hence, we conclude that Skinrood had a lawful basis for frisking Gantt in furtherance of his reasonable suspicion that Gantt was hiding contraband in his pants.

 During the frisk he felt the bag and its contents and immediately concluded that it was a bag of drugs because of the way it felt. He was then justified by the "plain feel" doctrine in removing the bag from Gantt's pants. *Rushing,* 935 S.W.2d at 33–34. As the Supreme Court instructed in *Rushing:*

> In *Minnesota v. Dickerson,* 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), the [United States] Supreme Court approved the "plain-feel" exception to the warrant requirement. The court reasoned that if "a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified...." *Id.* at 375–76, 113 S.Ct. at 2137. The court concluded that the search in *Dickerson* exceeded the scope of *Terry* because the incriminating character of the object felt was not immediately apparent to the officer. *Id.* at 379, 113 S.Ct. at 2139.

935 S.W.2d at 32.

Once the bag was out of Gantt's pants, in full view, Skinrood could see its contents through the clear plastic. He saw 11 white, rock-like balls wrapped in individual

packages. He asked Gantt what the balls inside the bag were, and Gantt admitted that they were crack cocaine. Hence, the bag's contents were in plain view, and the state was, therefore, not obligated to obtain a search warrant of the bag's contents as it may have been had the bag not been clear. *United States v. Jacobsen*, 466 U.S. 109, 114, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984) ("[e]ven when government agents may lawfully seize ... a package to protect loss or destruction of suspected contraband, the Fourth Amendment requires that they obtain a warrant before examining the contents of such a package").

We find no merit, therefore, in Gantt's complaint on appeal. We affirm the circuit court's judgment.

ROBERT G. ULRICH, Presiding Judge, and EDWIN H. SMITH, Judge, concur.