STATE of Missouri, Plaintiff–Respondent,

v.

Timmy CUNNINGHAM, Defendant–Appellant.

No. 27028.

Missouri Court of Appeals,
Southern District,
Division One.

May 30, 2006.

Irene Karns, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Richard A. Starnes, Asst. Atty. Gen., Jefferson City, for respondent.

NANCY STEFFEN RAHMEYER, Presiding Judge.

Timmy Cunningham ("Appellant") appeals his convictions of possession of a controlled substance with intent to distribute, pursuant to section 195.211,[1] and possession of a controlled substance, pursuant to section 195.202. Appellant waived his right to a jury trial and was convicted by the circuit court of Pemiscot County on both charges. Appellant does not challenge the sufficiency of the evidence, and therefore the recitation of the facts is viewed in a light most favorable to the verdict.

On May 11, 2004, Officer Jim Wallace ("Officer Wallace") was investigating Appellant because he had received information that Appellant was possibly carrying drugs that day. Officer Wallace stopped by Appellant's place of employment and was informed that Appellant had been suspended pending the results of a drug test.

Sometime in the late afternoon hours of that same day, Officer Wallace received a dispatch requesting his assistance for an ambulance call at 203 East 13th Street in Caruthersville, Missouri, an area that is considered to be "high in drug activity." Officer Wallace arrived at the location before the ambulance. Upon his arrival, he first noticed Appellant and an unidentified individual going to the back door of the house. Officer Wallace walked in the open front door[2] and saw Appellant in the front

---

1. All references to statutes are to RSMo.2000, unless otherwise specified.

2. Appellant does not take issue with Officer Wallace's legal right to enter the residence.

of the room. Upon entry into the house, Appellant pointed toward a room at the back of the house and said, "he's over there." Officer Wallace believed Appellant's statement to mean that the person the ambulance was coming for was in the back of the house.

At this point, Officer Wallace looked down at Appellant's right pocket and noticed a large bulge, which he suspected to contain drugs. When Officer Wallace looked back up at Appellant, he saw Appellant looking at him and trying to cover the bulge with his hand. Appellant displayed signs of nervousness during this time. Appellant mentioned again that, "he was over there," presumably referring to the individual in the back room, and Appellant started walking toward the back of the house. Officer Wallace followed Appellant to the back door, and then the unidentified individual started running and fled from the scene.[3]

Appellant reached into his pocket and started moving toward the back door, but Officer Wallace grabbed Appellant by his right arm and patted him down. He felt the bulge, which appeared to be in some type of plastic container, such as baggies, in Appellant's pocket. He then reached into Appellant's pocket and pulled out a baggie containing several bags of marijuana and several small containers which appeared to be crack cocaine. Officer Wallace did not believe the bulge to be a weapon.

Appellant was charged with one class B felony of possession of a controlled substance with intent to deliver cocaine, one class C felony of possession of cocaine, a controlled substance, and one class C felony of possession of a controlled substance with intent to deliver marijuana. The third count was dismissed by the State and Appellant was ultimately tried only on the first two counts. Appellant filed a written pre-trial motion to suppress the drugs, which was denied after an evidentiary hearing; he waived his right to a jury trial. Following the bench trial, Appellant was convicted of possession of a controlled substance with intent to distribute and possession of a controlled substance on May 17, 2005. The original transcript indicated that at sentencing Appellant was given a sentence of five years on the first charge and seven years on the second; however, a corrected transcript was provided to this Court while the appeal was pending. The corrected transcript stated that at the sentencing the circuit court actually sentenced Appellant to fifteen years in prison for the conviction of possession of a controlled substance with intent to distribute and seven years in prison for the conviction of possession of a controlled substance, both sentences to run concurrently with each other.

■ Appellant initially raised three points on appeal. In Point I, he contended that the circuit court plainly erred in entering a written judgment and sentence of fifteen years for possession of a controlled substance with intent to distribute because the oral pronouncement of sentence in open court was for a term of five years in prison. Appellant urged this Court to exercise its authority under Rule 30.23 [4] to correct the written sentence to reflect the five-year sentence pronounced in open court. As noted, while this appeal was pending, a corrected transcript was filed which indicated that the oral pronouncement and the sentences in the written judgment and sentence for Appellant's convictions were identical. Appellant did

---

3. There is nothing in the record that identifies this individual.

4. All rule references are to Missouri Court Rules (2006), unless otherwise specified.

not respond to the tendered corrected page from the transcript nor file a reply brief challenging the corrected transcript; therefore, we shall accept the corrected page as the correct pronouncement of the sentence by the trial court and deny Appellant's first point as moot.

In Point II, Appellant posits that the circuit court plainly erred in convicting him of both charged crimes because, in the circumstances of this case, possession of a controlled substance is a lesser included offense of possession of a controlled substance with intent to distribute and convictions of both charges violated his right to be free from double jeopardy under the Fifth and Fourteenth Amendments to the United States Constitution and section 556.041. In Point III, Appellant argues that the circuit court erred in failing to sustain his motion to suppress the drugs as evidence because Officer Wallace's search of him was in violation of the Fourth and Fourteenth Amendments to the United States Constitution and article I, section 15 of the Missouri Constitution.

For ease of discussion, we shall address Appellant's third point before his second point. In Point III, he posits that the trial court erred in overruling his motion to suppress the cocaine found in his pocket because Officer Wallace's pat down search of him was in violation of the Fourth and Fourteenth Amendments to the United States Constitution and article I, section 15 to the Missouri Constitution in that the search was unreasonable. The State counters by arguing that Officer Wallace had reasonable suspicion to pat down Appellant, and the resulting discovery of the cocaine was valid because upon the pat down search, it was immediately apparent to him that drugs were in Appellant's pocket.

▇▇▇ When a motion to suppress is overruled and the evidence was introduced at trial, an appellate court will consider the evidence presented both at the suppression hearing and at trial in determining whether the motion should have been granted. *State v. Goff,* 129 S.W.3d 857, 861–62 (Mo. banc 2004). Although this Court must defer to the trial court on issues of witness credibility and factual findings, the legal determination as to whether reasonable suspicion existed is made *de novo. Id.* at 862. "The Fourth Amendment, applicable to the states through the Fourteenth Amendment, permits police officers to briefly stop an individual if the officer 'observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot[.]' " *Id.* (quoting *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). A police officer is permitted to briefly detain an individual, in what is referred to as a "Terry stop," if he has a reasonable suspicion supported by articulable facts that those stopped are engaged in criminal activity. *Id.*

▇▇▇ Once a lawful *Terry* stop is made, the police officer may conduct a "pat down" search of the defendant if the officer " 'observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous....' " *Goff,* 129 S.W.3d at 864–65 (*quoting Terry,* 392 U.S. at 30, 88 S.Ct. 1868). The purpose of a pat down search is not to discover evidence of a crime, but rather to allow an officer to continue his or her investigation without fear of being harmed. *State v. Rushing,* 935 S.W.2d 30, 32 (Mo. banc 1996). A hunch on the part of the officer that the defendant may be armed and dangerous will not suffice to justify a pat down; instead, the officer must have a reasonable and particularized suspicion. *Goff,* 129 S.W.3d at 865. If

during the course of a lawful pat down search the officer feels something that is immediately apparent as contraband, its warrantless seizure is justified. *State v. West*, 58 S.W.3d 563, 572 (Mo.App. W.D. 2001).

■■■■ Appellant relies upon the admissions of the officer that he did not believe the bulge in Appellant's pocket to be a weapon and his acknowledgement that he thought what he felt in Appellant's pocket were baggies of drugs. The problem with Appellant's argument is that the officer's subjective intentions for conducting a *Terry* stop and a pat down search are not relevant under a Fourth Amendment analysis. *Id.* at 568. In determining whether or not a pat down search is unreasonable, the test is whether or not "a reasonably prudent [person] in the circumstances would be warranted in the belief that his [or her] safety or that of others was in danger." *State v. Kovach*, 839 S.W.2d 303, 310 (Mo.App. S.D.1992). In determining reasonable suspicion, the totality of the circumstances must be considered. *State v. Franklin*, 841 S.W.2d 639, 644 (Mo. banc 1992).

We find *State v. Gantt*, 87 S.W.3d 330 (Mo.App. W.D.2002), to be instructive on the issue of the subjective mindset of the officer as opposed to the reasonableness of the officer's conduct. In *Gantt*, the defendant was stopped for a traffic violation. *Gantt*, 87 S.W.3d at 332. Upon noticing a plastic bag sticking out of Gantt's pants, the officer ordered the defendant to exit the vehicle. *Id.* The officer asked the defendant whether he " 'had anything in his crotch,' " and the defendant answered in the negative. *Id.* The officer then conducted a pat down search of the defendant and felt a lump in the defendant's pants. *Id.* The officer concluded that the lump was a controlled substance and reached into the defendant's pants to pull out a plastic bag. *Id.* When the officer asked the defendant what was in the bag, the defendant admitted it was crack cocaine. *Id.*

On appeal, the court considered whether the officer had a reasonable suspicion to justify the pat down search. The court noted that although the officer testified that he did not "have any more than a concern that [the defendant] possibly had a gun," the relevant inquiry was not the subjective mindset of the officer but rather the reasonableness of the officer's conduct. *Id.* at 333–34. Even though the officer believed the content of the bag was more likely drugs than a weapon, under the totality of the circumstances, it was not an unreasonable concern that the bag might have contained a weapon. *Id.* at 334. In addition, the court noted that the defendant had lied about having the bag, the defendant's appearance seemed peculiar, and the encounter was at nighttime on the side of the highway. *Id.*

■■■ Likewise, in the present case, under the totality of the circumstances, the officer's pat down search was lawful. Officer Wallace had a reasonable suspicion to believe that Appellant was engaging in criminal conduct. Officer Wallace had been investigating Appellant for drug possession because of information he had received earlier in the day. He was aware that Appellant's employer had suspended Appellant pending the result of a drug test. Officer Wallace arrived at the house to assist on a 911 emergency call and, upon entering the house and seeing Appellant, he noticed a bulge in Appellant's pocket. Appellant appeared nervous and tried to cover up his pocket. The individual with Appellant ran from the back of the house. Appellant started moving away from Officer Wallace. Officer Wallace at that time was the only police officer at the scene. The fact that Officer Wallace did not have

any other officers assisting him must also be considered. *See United States v. Menard*, 95 F.3d 9, 10–11 (8th Cir.1996) (considering the number of police officers present at the scene as part of the totality of circumstances justifying a pat down search). The totality of the circumstances provided Officer Wallace a reasonable belief that Appellant was involved in criminal activity and the person with whom he was dealing may have been armed and presently dangerous. We are not left with a definite and firm belief that the trial court made a mistake. Point III is denied.

Appellant's second point presents a different situation. Appellant's second point posits that the trial court plainly erred[5] in convicting him of possession of a controlled substance with intent to distribute and possession of a controlled substance, thus violating his right to be free from double jeopardy as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution. Appellant argues that under the circumstances of the case at bar, possession of a controlled substance under section 195.202 is a lesser included offense of possession of a controlled substance with intent to distribute under section 195.211. Appellant argues that it was impossible for him to commit the crime of possession with intent to distribute without also committing the crime of possession of a controlled substance. Keeping in mind that Appellant was charged and convicted with only two drug charges concerning cocaine, we agree.

 The Fifth Amendment to the U.S. Constitution provides that no person "shall be subject for the same offense to be twice put in double jeopardy of life or limb." U.S. Const. amend. V. This protection has been made applicable to Missouri through incorporation into the Due Process Clause of the Fourteenth Amendment. *See Benton v. Maryland*, 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). The protection from double jeopardy embodied in the U.S. Constitution is the same as that protection afforded by the common-law in this state. *State v. Richardson*, 460 S.W.2d 537, 538 (Mo. banc 1970). In addition, review by this Court for a double jeopardy violation is conducted *de novo*. *State v. Brumm*, 163 S.W.3d 51, 55 (Mo.App. S.D.2005).

 The separate or several offense rule, and not the same transaction rule, is used in Missouri in determining double jeopardy. *State v. Treadway*, 558 S.W.2d 646, 651 (Mo. banc 1977), *overruled on other grounds by Sours v. State*, 593 S.W.2d 208 (Mo. banc 1980). Under the rule, a defendant may receive multiple convictions for violating the same statute if the defendant has in law and fact committed separate crimes. *Id.* The guarantee against double jeopardy provides two distinct protections, (1) "protection from successive prosecutions for the same offense after either an acquittal or a conviction" and (2) "protection from multiple punishments for the same offense." *State v. Flenoy*, 968 S.W.2d 141, 143 (Mo. banc 1998). In the case at bar, Appellant's claim is that he is protected from multiple punishments for the same offense.

The State concedes that possession of a controlled substance is a lesser included offense of possession with intent to distribute. The State admits that if Appellant was convicted of both crimes for the same act of possession, he would be entitled to relief. The State contends, however, that the record supports an interpretation of Appellant's convictions in which Appellant was not convicted of a greater and lesser included offense for the same criminal act

---

5. Appellant concedes plain error review.

of possessing one single package of cocaine, but rather he was convicted of the separate crimes of possessing two different packages of cocaine. The State concludes that because this interpretation of Appellant's convictions is possible from the record, it is not clear from the face of the record that the court was without jurisdiction to enter the convictions.

The State contends that there is some support in the record to uphold the trial court's action as not amounting to manifest injustice because there was evidence that Appellant committed acts satisfying at least two acts of possession of a controlled substance. The State argues that because Appellant was actually in possession of fifteen individually packaged "rocks" of crack cocaine, and because there is not a "strong, clear demonstration" that the legislature intended to punish the possession of multiple units of the same type of controlled substance as a single crime, Appellant's right to be free from double jeopardy was not violated.

We find the case of *State v. Polson*, 145 S.W.3d 881 (Mo.App. W.D.2004), edifying. In *Polson*, the defendant was convicted of possession of a methamphetamine precursor drug, namely pseudoephedrine, with intent to manufacture methamphetamine (Count V) and possession of a chemical, namely pseudoephedrine, with intent to create a controlled substance, namely methamphetamine (Count IV). *Polson*, 145 S.W.3d at 884. On appeal, the defendant challenged the two convictions as violating his right to be free from double jeopardy. *Id.* at 890. The western district reviewed the double jeopardy claim for plain error. *Id.* at 891.

After examining the relative statutes under which Appellant was convicted, the western district concluded that Count V was a lesser included offense of Count IV. *See id.* at 894. The State argued to the

court "that there was no double jeopardy violation because it presented sufficient evidence at trial to establish what it claim[ed] were two *separate and distinct* instances of possession of pseudoephedrine with the intent to manufacture methamphetamine." *Id.* The State contended that because pseudoephedrine was found in two different places, the evidence supported the two different charges of possession of pseudoephedrine with intent to manufacture methamphetamine. *Id.*

The court rejected the State's argument. The court based its decision on the fact that the State's position at trial was that the evidence of pseudoephedrine used against the defendant in Count IV was the same evidence used against the defendant in Count V, *Id.* at 894–95, and that the State provided "no applicable authority . . . in support of its argument that the constructive joint possession, by a single defendant, of multiple quantities of the same precursor chemical [was] legally sufficient to sustain [the] separate convictions." *Id.* at 896.

Like *Polson*, the State in the case at bar is switching its position on appeal. The State now argues that the record could support an interpretation that the cocaine Appellant was convicted of being in possession of was different than the cocaine Appellant was convicted of intending to distribute. However, this distinction was never presented by the State to the trial court. Count I charged Appellant with "possession of a controlled substance with intent to deliver" in that Appellant, "with the intent to deliver, possessed cocaine." Count II charged Appellant with "possession of a controlled substance" in that Appellant "possessed cocaine."

The State's contention on appeal is that the mere fact that Appellant possessed fifteen individually packaged rocks of cocaine shows that Appellant had the intent to commit fifteen separate crimes. This

accusation rests on pure speculation. To the contrary, even though the record shows there were fifteen individually wrapped rocks of crack cocaine, all of those individual baggies were placed into one larger baggie, thus implying that all of the cocaine was together for the purpose to commit only one crime. There was no attempt at trial to distinguish the cocaine as separate evidence. Although the evidence is to be viewed in a light most favorable to the guilty verdicts, the guilty verdicts came from two separate counts, not fifteen counts, and the State's speculation that Appellant was intending to commit fifteen separate drug crimes is weak.

In the present case, Appellant did not possess cocaine at distinct times and in different places. He was found with all of the cocaine together, in a large baggie, in one place—his pocket—and at one time— in the house. Thus, there is no similarity to *State v. Barber*, 37 S.W.3d 400 (Mo.App. E.D.2001), to support the State's position that Appellant committed two distinct acts of possessing cocaine. Moreover, the State in *Barber* pursued a theory at trial that the defendant committed three distinct crimes each time he exhibited the knife. *Id.* at 402. In the case at bar, the State's theory at trial was that Appellant possessed a single controlled substance, and that controlled substance was cocaine.

The State should not be able to pursue a theory at trial that Appellant committed one act of possessing cocaine, and on appeal change its position to the Appellant committed multiple acts of possessing cocaine, for the sole reason that its position at trial would result in a violation of double jeopardy. *See Olson v. Christian County*, 952 S.W.2d 736, 742 (Mo.App. S.D.1997) ("On appeal, a party is bound by the position he (or she) took in the trial court and will not be heard on a different theory."). The State never proved that Appellant had the intent to commit fifteen separate crimes, but makes a blanket statement to that effect.

In *Polson*, the court stated,

"Under the double jeopardy doctrine, the state cannot split a single crime and prosecute it in separate parts; otherwise the state could prosecute a defendant as many times as there are parts into which an offense is susceptible of being divided. This means that a prosecution for any single part of a crime bars any further prosecution based upon the whole or another part of that crime. Double jeopardy forbids the state from a piecemeal prosecution of an offense."

*Polson*, 145 S.W.3d at 896 (*quoting State ex rel. Westfall v. Campbell*, 637 S.W.2d 94, 97 (Mo.App. E.D.1982) (internal citations omitted)).

What the State is doing in the case at bar is trying to prosecute a single crime into separate parts. The State is arguing for the first time that Appellant committed separate crimes by possessing separate baggies of cocaine. The double jeopardy clause forbids such a prosecution, absent a legislative intent to do so. There is nothing to suggest that the legislature intended for multiple punishments for a single act of possessing the *same* controlled substance, namely cocaine. *Cf. State v. Harris*, 153 S.W.3d 4, 8 (Mo.App. W.D.2005) (holding that the legislature intended for multiple punishments when a defendant makes a single act of possessing *different* types of controlled substances). Convicting Appellant of both possession of cocaine, and possession of cocaine with the intent to distribute, based on the single act of possessing cocaine, was a violation of Appellant's right to be free from double jeopardy. A manifest injustice has occurred because Appellant has been convicted of two crimes, when in "law and fact" he should have only been convicted once. *Polson*, 145 S.W.3d at 897. We find such action worthy of plain error review.

Plain error review is limited to the text of Rule 30.20, which states in pertinent part, "plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Rule 30.20. Although the plain error rule is to be used sparingly and this Court will not apply it to review every alleged trial error not properly preserved, Appellant's claim establishes grounds for believing a manifest injustice or miscarriage of justice has occurred. *State v. Roberts,* 948 S.W.2d 577, 592 (Mo. banc 1997); *State v. Campbell,* 122 S.W.3d 736, 739–40 (Mo.App. S.D. 2004). Appellant was convicted of possession of a controlled substance and possession with intent to distribute. The trial court committed plain error.

We affirm the conviction for possession of a controlled substance with intent to distribute but vacate the lesser of Appellant's two concurrent sentences, his conviction and sentence of seven years for possession of a controlled substance.

PARRISH and LYNCH, JJ., concur.