STATE of Missouri, Plaintiff–Appellant

v.

Robert P. KELLEY, Defendant–
Respondent.

No. 28248.

Missouri Court of Appeals,
Southern District,
Division One.

June 26, 2007.

Thomas W. Cline, Prosecuting Atty., John O. Russo, Asst. Prosecuting Atty., Gainesville, for appellant.

Craig A. Johnston, Columbia, for respondent.

JOHN E. PARRISH, Judge.

■ This is an appeal by the state from an order suppressing evidence. *See* § 547.200.1(3).[1] This court affirms.

In reviewing the trial court's order sustaining defendant's motion to suppress, the facts and inferences that may be gleaned from the record are to be stated favorably to the ruling that is challenged on appeal. *State v. Blair*, 691 S.W.2d 259, 260 (Mo.banc 1985). "The correctness of the trial court's decision is measured by whether the evidence is sufficient to sustain the findings." *State v. Woods*, 790 S.W.2d 253, 254 (Mo.App.1990). *State v. Zancauske*, 804 S.W.2d 851, 852–53 (Mo.App.), *cert. denied*, 502 U.S. 817, 112 S.Ct. 73, 116 L.Ed.2d 47 (1991).

Robert P. Kelley (defendant) was charged with possession of methamphet-amine, a controlled substance, § 195.202, and use of drug paraphernalia, § 195.233. Those charges arose following a June 6, 2003, inquiry by David Holmes, a narcotics investigator with the Ozark County Sheriff's Department. Officer Holmes went to the residence of Venita Kelley,[2] defendant's mother, where defendant was living. The sheriff's department had received a telephone call from a neighbor reporting that defendant was spending a lot of time in defendant's mother's garage. The neighbor was concerned about a possibility that this involved drug manufacturing. The officer told the trial court that the purpose of going to Ms. Kelley's house was to "determine if in fact anything was going on at the residence." He identified his actions as "[k]nock and talk."

Defendant was in the yard when Officer Holmes arrived. Officer Holmes approached defendant to inquire about the circumstances that had been reported. He told defendant there had been a report that suggested possible drug activity; that the person who made the report suspected that defendant "might be involved in manufacturing meth." Defendant denied that he was "involved with meth."

Defendant's speech was slurred and he stumbled as he walked. He appeared intoxicated. Officer Holmes observed that defendant had a "large hunting knife on his side." He took the knife and placed it on a nearby truck. Officer Holmes asked defendant if he had anything else on him. Defendant said he did not. Officer Holmes could see defendant's pockets were bulged out; that "these pockets were packed." He asked defendant if he would mind emptying his pockets. Defendant

---

1. References to statutes are to RSMo 2000.

2. Ms. Kelley is identified as "Venita Kelley" in the transcript. The motion to suppress evidence spells her name "Vonetta Kelley."

This opinion will use the spelling that appears in the particular document that is relevant to the matter it addresses.

piled "a lot of stuff he had in his pockets" on the tailgate of a pickup truck.

Officer Holmes observed that one of defendant's pockets was still "bulged out." The officer "patted him down." He felt a round metal cylinder in defendant's pocket. The officer was asked if he knew what the item was when he felt it. He answered, "No, I knew it was some type of cylinder." The following colloquy occurred between the trial court and the officer.

> THE COURT: But you took it out of his pocket, opened it up?
>
> THE WITNESS: I don't remember if he did or I did, I believe I asked him, "What's that?", and at that time it was brought out, I don't remember.
>
> THE COURT: And he opened it up?
>
> THE WITNESS: No, sir, I opened it.
>
> THE COURT: You opened it up then?
>
> THE WITNESS: Yes, sir.
>
> THE COURT: Did you ask him permission or did you just do it?
>
> THE WITNESS: I believe I just did it.

Officer Holmes identified the container as a military match holder. When he opened the container, he observed a piece of straw and a small glass bottle with white powder inside. He field tested the lid of the container. It tested positive for methamphetamine.

Defendant filed a motion to suppress evidence requesting "that all evidence seized on or about June 6, 2003, from the search of Defendant on the private property of Vonetta Kelley and the subsequent search on Vonetta Kelley's property . . . be excluded from consideration in this case, including any additional evidence that might have been derived from this seized evidence. . . ." Following a hearing, the trial court ordered:

1) The Defendant's Motion to Suppress evidence is sustained as to the methamphetamine discovered in the match container found on the Defendant's person;

2) The Defendant's Motion to Suppress evidence as to evidence discovered within the residence/garage/outbuildings in this matter is overruled; . . .

The trial court made the following findings with respect to sustaining the part of the motion directed to the contents of the match holder.

> [T]he Court finds that Deputy Holmes' discovery of evidence resulting from the Terry frisk of Defendant did constitute an unconstitutional search. When Deputy Holmes initially approached Defendant, he noticed a knife on the Defendant's belt, and that Defendant seemed intoxicated. Thereafter, Deputy Holmes removed the knife from the Defendant, and asked the Defendant to empty his pockets. After the Defendant had removed some items from his pockets, Holmes could see an item remaining. Holmes then conducted a weapons frisk, and felt a hard object in Defendant's pocket. The item was removed from Defendant's pocket, which he then determined to be a GI-type match container. Holmes then opened the container, and discovered methamphetamine.

> The Court finds this portion of the search to be constitutionally unreasonable. Deputy Holmes protective frisk of the Defendant was prudent, especially in light of the fact that Defendant was wearing a knife on his belt and was visibly intoxicated. Possibly, determining that the hard object in Defendant's pocket was a match container could be permissible. However, once Deputy Holmes found that the hard object was indeed only a match container, and not a weapon, his weapons frisk was over. The

Deputy's discovery of the methamphetamine by then opening the match container constituted an unreasonable search. Therefore, the Court orders suppressed the methamphetamine found within the match container.

■■■ The state argues that "[t]he Trial Court erred in suppressing methamphetamine found in a match case on the defendant during a 'Terry' protective frisk, because the Court ruled the frisk was proper and since the officer testified that based upon his experience, training and circumstances, the officer believed the match case was being used to hold controlled substances, the evidence should be admissible, in that the suppression of evidence was improper under the 'Plain Feel' and 'Plain View' doctrines...."[3] The genesis of the "plain feel" exception to the warrant requirement for conducting a search was explained in *State v. Rushing*, 935 S.W.2d at 32:

> In *Minnesota v. Dickerson*, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), the Supreme Court approved the "plain-feel" exception to the warrant requirement. The court reasoned that if "a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless sei-

zure would be justified...." *Id.* at 375–76, 113 S.Ct. at 2137.

Removing the match holder from defendant's pocket and opening the container constituted a search and seizure. *See State v. Hensley*, 770 S.W.2d 730, 734 (Mo. App.1989). "Warrantless searches or seizures are per se unreasonable unless there are special circumstances which excuse compliance with federal and state warrant requirements." *Id., citing U.S. v. Kelly*, 529 F.2d 1365, 1371 (8th Cir.1976). The state contends there were special circumstances; that the search was permissible pursuant to the plain feel doctrine in that the officer's experience made his seizure of the match container and the search of its contents permissible. The question for this court to determine is whether the trial court's conclusion that those actions were unreasonable is supported by the evidence adduced at the suppression hearing.

In many respects this case is similar to *State v. Hensley, supra.* In *Hensley*, highway patrol officers observed a pickup truck on the shoulder of an outer road to an interstate highway. They saw the backup lights on the pickup come on as they passed on the interstate highway causing them to believe the pickup was backing down the outer road. The officers had no knowledge of any criminal activity by the occupant or occupants of the pickup; however, they decided to investigate. The officers exited the interstate highway onto the outer road. They were delayed in going to the pickup they had observed by

---

**3.** A law enforcement officer who, in the course of his or her routine duties, identifies specific and articulable facts which, taken with rational inferences from those facts, create a reasonable suspicion that an individual has or is about to commit a crime, may make a protective search to assure the officer's safety. *See Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

Once a valid stop has been made, police may pat a suspect's outer clothing if they

have a reasonable, particularized suspicion that the suspect is armed. [*Terry, supra.*] "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence...." *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972).

*State v. Rushing*, 935 S.W.2d 30, 32 (Mo.banc 1996), *cert. denied*, 520 U.S. 1220, 117 S.Ct. 1713, 137 L.Ed.2d 837 (1997).

stopping en route to provide assistance to another motorist.

The officers then proceeded to where they had observed the pickup. They saw two vehicles, a pickup and a passenger car, parked along the side of the road. No one was in the pickup. Two men were in the car. The officers proceeded to the car to see if the occupants needed assistance. As they approached the car, they observed a shotgun, a legal weapon, in the back seat.

The occupants had gotten out of the car. The officers "patted down" the two men. The officers explained their purpose was for personal protection and to see if either of the men was carrying small caliber weapons or handguns. In the course of patting down one of the men, the officer conducting the search felt a bulge the size of a film canister in the man's pocket. The officer removed the canister, which he knew was not a weapon, opened it and smelled the odor of what he believed was marijuana. The other officer patted down the second occupant of the car and discovered a small round cylinder in a shirt pocket that the officer believed to be a bullet. The object was removed and discovered to be a small vial. It was opened and found to contain what was believed to be cocaine. At a later point in time, the two men were arrested. The man with the vial was charged with possession of cocaine.

A motion to suppress evidence was filed in *Hensley* with respect to the cocaine taken from the man's pocket and any other controlled substance. The trial court found that neither officer would have been justified in concluding, after the pat-down, that what they felt in the men's pockets were weapons. It found that the search after the pat-down was illegal and without probable cause, and suppressed all items seized from the men or vehicle, including the cocaine or any other controlled sub-

stance taken from them. The state appealed. This court affirmed the order suppressing the evidence.

*Hensley* held that the taking of the articles found in the men's pockets following a pat-down search was a seizure; that in order for a search of the items to be permissible, the officers would have had to identify the objects taken with "specific and articulable facts, which taken together with rational inferences derived from those facts, reasonably warrant[ed] the intrusion." *Id.* at 734. This court concluded:

> The facts [in *Hensley*] justified [the officers] in making an investigative stop of [the occupants of the car], and making a limited pat down search of their bodies to see if either was carrying weapons that could be used to harm the officers. [Footnote omitted.]
>
> The question is, after they "patted down" the two men, and felt nothing that even remotely resembled a weapon, did they have any legal right to continue with their search and remove items from the pockets of [the two men] and use those items as evidence in a subsequent prosecution of Hensley? The answer is no.

*Id.* at 735–36. *Hensley* explained:

> Here, [the officers] knew, when they touched the objects in question through the clothing of [the two men], that they were not weapons which could be used to harm the officers. Since they had such knowledge, no reasonably prudent man could possibly be in fear that the vial in Hensley's shirt pocket that [the officer] thought was a bullet, or the small film canister found in Weber's pocket by [an officer], was a weapon that could be used by [either man] to endanger the safety of the two officers. *See Terry v. Ohio,* 392 U.S. at 29, 30, 88 S.Ct. at 1883, 1885. Under those circumstances, and since the law enforce-

ment officers had no warrant and were not making a search incident to a legal arrest for probable cause, the extraction of the film canister from Weber's pocket and the vial from Hensley's pocket, and opening those receptacles for further examination, amounted to an illegal search in violation of the state and federal constitution.

*Id.* at 736.

■ In this case, as in *Hensley,* Officer Holmes had no warrant nor was he making a search incident to a legal arrest for probable cause. He observed the hunting knife, a legal weapon, in a scabbard on defendant's belt, took it from defendant, and placed it in a location where it did not pose a danger to his safety. He also observed bulges from items in defendant's pockets. The officer had defendant place the items from his pockets on the tailgate of defendant's pickup. When Officer Holmes observed still another bulge from an item in defendant's pocket, he "patted him down." The trial court asked Officer Holmes what the thing was that he felt. Officer Holmes replied, "Round metal cylinder, it was a military can." Officer Holmes was asked if he knew what the item was when he felt it. He answered, "No, I knew it was some type of cylinder."

There was no evidence from which a court could find that Officer Holmes could have reasonably concluded that the presence of the cylinder he touched when he patted down defendant endangered his safety. Officer Holmes did not identify the object he felt as contraband—his testimony was that he did not know what the item was when he felt it. *See State v. Moore,* 99 S.W.3d 579, 583–84 (Mo.App. 2003).

■ The purpose of the limited search permitted by *Terry* is not to discover evidence of a crime, but to allow an officer to pursue his or her investigation without fear of violence. *Id.* at 583. "A *Terry* stop and frisk is limited in scope to this protective purpose." *Id.* The evidence before the trial court was sufficient to sustain the court's finding that the discovery of the methamphetamine went beyond the scope permitted for a *Terry* search; that the opening of the match container constituted an unreasonable search.

The state argued that *State v. Rushing, supra,* supports Officer Holmes' conduct. This court does not agree. In *Rushing,* a juvenile officer observed what appeared to be a drug transaction as he drove by an area known to law enforcement officers as a location where illegal drug trafficking took place on a recurrent basis. The juvenile officer promptly reported his observations to a police officer who immediately investigated. The police officer confronted the individual the juvenile officer had observed putting something in his pants pocket after having reached into the car from which he received the item. The officer performed a pat-down search of the person the juvenile officer had observed. The police officer felt an object he believed was a drug container.

The trial court in *Rushing* found that the incriminating character of the object the police officer felt when he performed a *Terry* search was immediately apparent to the officer. The officer's first impression, based on his feel of the object without further manipulation, was that it was a container of crack cocaine. *Rushing* concluded that the evidence, taken as a whole, supported that finding. *Rushing* explained:

In sum, the following elements properly support a finding that [the police officer] had probable cause to conclude that Rushing was carrying cocaine before he seized the container: 1) the officer's feel of the object, 2) his knowledge of the

suspicious transaction observed by [the juvenile officer], 3) the reputation of the neighborhood as a drug trafficking area, and 4) his knowledge of commonly used drug containers.

*Id.* at 33.

The factors on which the court relied in *Rushing* are either not present in this case or not present with the degree of probability that existed there. Here, Officer Holmes did not know the nature of the object when he felt it through defendant's clothing. No one had observed defendant perform acts that were consistent with defendant having drugs on his person. The private property where the seizure of the container occurred was the property of defendant's mother. It was not known as a drug trafficking area. (Officer Holmes' presence was to investigate a single, unconfirmed report that defendant spent a lot of time in a garage there.) Officer Holmes did not testify that he had knowledge of commonly used drug containers that would enable him to identify those containers by feel.

The evidence supports the trial court's finding. The state's point is denied. The order sustaining the motion to suppress the contents of the match container taken from defendant's person is affirmed.

RAHMEYER, P.J., and SCOTT, J., concur.