JEFFREY W. BATES, J.
Following a bench trial, Keon Allen (Defendant) was convicted of the class B felony of possession of a controlled substance with intent to distribute. See § 195.211.[1] Presenting a single point on appeal, Defendant contends the trial court clearly erred in failing to suppress "the cocaine, marijuana, and methamphetamine evidence" because such evidence was obtained in violation of his Fourth Amendment right to be free from unreasonable search and seizure. We disagree and affirm.
"This Court reviews a trial court's ruling on a motion to suppress in the light most favorable to the ruling, disregarding *519 any contrary evidence or adverse inferences." State v. Waldrup , 331 S.W.3d 668, 672 (Mo. banc 2011). When a motion to suppress is overruled and evidence is introduced at trial, an appellate court considers the evidence presented at the suppression hearing and at trial in determining whether the motion should have been granted. State v. Goff , 129 S.W.3d 857, 861-62 (Mo. banc 2004). Viewed from that perspective, the following facts were before the trial court.
Around 5:30 p.m. on June 24, 2015, Officer Rick Cook (Officer Cook) went to a residence on Michigan Lane in Dexter, Missouri, to investigate a report of domestic assault. The dispute concerned whether a guest who had been living there would be permitted to stay at the residence.
When Officer Cook arrived, he encountered five individuals: (1) Sharon Goodman (Goodman), who owned the residence and lived next door; (2) Heath Moore (Moore), Goodman's grandson; (3) Yvonne Anderson (Anderson), who lived with Moore at the residence; (4) Delisha Price (Price), the guest; and (5) Price's seven-year-old daughter. When Price was asked to leave the residence, an altercation between Price and Anderson ensued. Goodman had called the police and consented to Officer Cook's entry into the residence.
According to Officer Cook, everyone was "fighting and arguing" and gave him different versions of what had gone on the past one or two days. After about 10 to 15 minutes, Officer Dwain Forshee (Officer Forshee) also arrived at the residence and was invited inside by Goodman and the others involved in the dispute. Officer Forshee similarly described the scene as one in which "everybody was arguing ... kind of chaos" and Officer Cook "was trying to basically figure out what was going on." Around that same time, the officers learned that Defendant, described as Price's boyfriend, also was a guest in the home and was in a bedroom.
Officer Forshee went to the bedroom to speak with Defendant. The officer wanted to see whether Defendant had played any part in the altercation and what he knew about it. According to Officer Forshee, it also was standard procedure when responding to a call at a residence to identify everybody inside, interview witnesses and obtain statements. When Officer Forshee first walked into the bedroom, he could tell that Defendant was awake because he saw Defendant's eyes squinted and Defendant's "eyeballs moving ... tracking me with his eyes." Defendant was attempting to appear asleep. Officer Forshee asked Defendant several times to get up, and Defendant finally opened his eyes and asked what was going on. When Officer Cook heard that Defendant was not complying with Officer Forshee's requests, Officer Cook went into the bedroom to assist.
Defendant provided two different false names to Officer Forshee. Defendant first stated that he was Terrell R. Smith, and then that he was Keon T. Smith. Both names came back "not on file" with the date of birth Defendant provided. Defendant also provided false social security numbers.
Defendant was wearing a t-shirt and long shorts. He also had a red bath towel over his waist and groin area. Defendant kept moving the towel around and fidgeting with it while seated, instead of getting up as Officer Forshee requested. The officers interpreted this as suspicious because: "[a] normal person is going to get up, move the towel and get up." Defendant kept his hands underneath the towel, fidgeting with it, and he would not remove it from his waist area. Officers Cook and Forshee both feared that Defendant might be concealing a weapon underneath the towel.
*520 When Defendant finally stood up, he was still holding the towel, even though he was fully clothed. Defendant was also fidgety, looking around and at the door. Defendant appeared sweaty and overly nervous. Both Officers Cook and Forshee were afraid that Defendant would attempt to flee.[2] Because Officer Forshee was afraid for the safety of Officer Cook and himself, he placed Defendant in handcuffs.
Officer Cook asked Defendant, "do you have anything illegal on you, a knife or a gun or anything like that," and Defendant nodded. Officer Cook then patted him down and felt a hard, round object in Defendant's left front shorts pocket, "[p]robably smaller than a baseball." Although Officer Cook was not sure what the object was, he thought it "could have been a weapon."
Officer Cook testified that police "continually get updates on weapons that they are using across the United States that are .22s that fit in the size of your hand that have a little barrel that sticks out, very little that you can squeeze that is hard." Based upon Officer Cook's "knowledge of how people are making weapons out of different things, that was enough for me" to further investigate the object. According to Officer Cook, under the circumstances he "felt like it could very well be a weapon[,]" that the item could have been any of various specific weapons, and that a ball-shaped weapon would not be uncommon.[3]
When Officer Cook reached inside Defendant's pocket, he pulled out a baggy containing marijuana and white substances. This baggy had several smaller baggies inside, some of which contained cocaine base, methamphetamine and heroin. Defendant's pocket also contained another baggy with a green leafy material.[4] Defendant was eventually charged, as a prior and persistent drug offender, with possession of and intent to distribute cocaine, a controlled substance.
Defendant filed a motion to suppress the drug evidence, arguing that he was unlawfully seized and searched.[5] Following an evidentiary hearing, the trial court denied the motion. The court found the testimony of Officers Cook and Forshee credible. The court concluded that the search of Defendant "was authorized for officer safety":
[T]he Court finds under the totality of the circumstances that the pat down search and subsequent recovery of illegal narcotics from defendant's pocket was authorized for officer safety and not in violation of his constitutional rights due to the conduct of defendant including the following: feigning sleep when officer entered bedroom, failure to respond to how long he had been in residence, failure to identify himself and intentionally providing false identification, placement of hand towel in his lap with his hands concealed by said towel and constant fidgeting; nervousness, *521 sweating and actions which officers interpreted as an attempt to flee.[6]
Prior to the introduction of the challenged evidence at trial, Defendant objected based on his motion to suppress. The objection was overruled, and Defendant was granted a continuing objection as to all matters argued in the motion to suppress. After the trial court found Defendant guilty as charged, the court sentenced him as a prior and persistent offender to ten years' imprisonment. This appeal followed.
When reviewing a ruling on a motion to suppress, this Court defers to the trial court's determination of credibility and factual findings, inquiring only "whether the decision is supported by substantial evidence, and it will be reversed only if clearly erroneous." State v. Edwards , 116 S.W.3d 511, 530 (Mo. banc 2003). "[A] determination as to whether conduct violates the Fourth Amendment is an issue of law that this Court reviews de novo. " Waldrup , 331 S.W.3d at 672 ; see Goff , 129 S.W.3d at 862.
The Fourth Amendment, applicable to the states through the Fourteenth Amendment, "protects the right of citizens to be free from unreasonable searches and seizures[.]" State v. Lovelady , 432 S.W.3d 187, 190 (Mo. banc 2014). "Warrantless seizures are generally unreasonable and, therefore, unconstitutional, unless an exception applies." Id . at 191 ; see State v. Smith , 448 S.W.3d 835, 840 (Mo. App. 2014). One common exception is the " Terry stop," which permits an officer to make a brief investigatory stop of an individual if the officer "observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot[.]" Terry v. Ohio , 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ; Goff , 129 S.W.3d at 862.
Once a lawful Terry stop is made, the police officer may conduct a "pat down" search of the defendant if the officer has a reasonable and particularized suspicion that the defendant "may be armed and presently dangerous[.]" Terry , 392 U.S. at 30, 88 S.Ct. 1868 ; Goff , 129 S.W.3d at 864-65. The purpose of a pat down search is not to discover evidence of a crime, but rather to allow an officer to continue his or her investigation without fear of being harmed. State v. Rushing , 935 S.W.2d 30, 32 (Mo. banc 1996). Thus, whether exigencies justified a Terry stop requires a two-step analysis: (1) whether the circumstances support a finding of reasonable suspicion justifying the initial stop; and (2) whether the officer's actions were reasonably related in scope to the circumstances which justified the interference in the first place. Waldrup , 331 S.W.3d at 673 ; see Terry , 392 U.S. at 19-20, 88 S.Ct. 1868.
Defendant's point contends the trial court clearly erred in overruling his motion to suppress evidence and continuing objection at trial, and in admitting the cocaine, marijuana and methamphetamine evidence. According to Defendant, such evidence was seized in violation of his Fourth Amendment right to be free from unreasonable search and seizure because: (1) the officers "could not have had a reasonable suspicion that crime was afoot under the totality of circumstances"; and (2) "there is no available exception to justify the warrantless search of [his] person" and therefore, "the contraband subsequently seized was illicit fruit of that unlawful search." We find no merit in these arguments.[7]
*522 Defendant first contends the officers lacked a "reasonable suspicion that crime was afoot" to justify the initial intrusion. He argues that he "was never present during the domestic dispute" and that the "dispute had also already been settled when officers came into contact with [him]." Our standard of review, however, requires us to review the evidence in the light most favorable to the trial court's ruling. So viewed, the evidence showed the dispute was far from settled when the officers learned of Defendant's presence. Officer Forshee arrived to a "kind of chaos" right around the same time the officers learned that Defendant was in the bedroom. According to both officers, it was not known whether Defendant had been present during the dispute, how he might have been involved or what he knew about it, which is why Officer Forshee went to speak with Defendant in the first place. Moreover, Defendant did not carry his burden to show that he had a reasonable expectation of privacy as a guest in the bedroom. See State v. Mitchell , 20 S.W.3d 546, 557 (Mo. App. 2000) (before an individual can invoke Fourth Amendment protections from warrantless searches and successfully argue for suppression of evidence obtained from such searches, "he or she has the burden to show a legitimate expectation of privacy in the place or thing being searched"); see also State v. Feldt , 512 S.W.3d 135, 153 (Mo. App. 2017) (same holding). Indeed, Goodman, the owner of the residence, had invited the officers to enter the residence and allowed them access to the bedroom. Therefore, Defendant did not have a reasonable expectation of privacy as a guest in that room. See, e.g. , Minnesota v. Olson , 495 U.S. 91, 99, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990) ("[f]rom the overnight guest's perspective, he seeks shelter in another's home precisely because it provides him with ... a place where [the guest] and his possessions will not be disturbed by anyone but his host and those his host allows inside "); United States v. Oates , 173 F.3d 651, 656 (8th Cir. 1999) ; see also State v. Smith , 90 S.W.3d 132, 141 (Mo. App. 2002) (party with control of the premises sought to be searched has authority to consent to a search).
Defendant next challenges the pat down search, arguing that "there is no available exception to justify the warrantless search of [his] person," including the officer safety exception. We disagree.
To justify a pat down, the officer must have "a reasonable, particularized suspicion that the suspect is armed." Goff , 129 S.W.3d at 865. The test is whether or not a reasonably prudent person under the circumstances would be warranted in the belief that his or her safety or that of others was in danger. State v. Cunningham , 193 S.W.3d 774, 779 (Mo. App. 2006). "In determining reasonable suspicion, the totality of the circumstances must be considered." Id . Generally, the frisk involves a pat down of the suspect's outer clothing, but where the officer sincerely fears a hidden weapon might be concealed, "a more extensive search may be appropriate in particular circumstances." Waldrup , 331 S.W.3d at 674. "If during the course of a lawful pat down search the officer feels something that is immediately apparent as contraband, its warrantless seizure is justified." Cunningham , 193 S.W.3d at 778-79 ; see State v. Gantt , 87 S.W.3d 330, 334 (Mo. App. 2002).
*523 Considering the totality of the circumstances, a reasonably prudent person under the circumstances faced by Officers Cook and Forshee would have been warranted in the belief that his or her safety was in danger. Cunningham , 193 S.W.3d at 779. The evidence supported a reasonable and particularized suspicion that Defendant was armed, based upon the following behavior exhibited by Defendant: (1) feigning to be asleep; (2) numerous false statements to police; (3) overly nervous demeanor and sweating; (4) flight-like behavior; (5) initial refusal to reveal his waist area; (6) his suspicious fidgeting underneath his towel, which caused both officers to believe at that point Defendant possessed a weapon; and (7) when Officer Cook asked Defendant if he had "a knife or a gun or anything like that," Defendant nodded affirmatively. All of this behavior would cause a reasonably prudent person to suspect that Defendant was armed and dangerous. When Officer Cook felt a hard, round object in Defendant's pocket, the officer opined "it could very well be a weapon," and testified that a ball-shaped weapon would not be uncommon. Given these circumstances and the officer's testimony, "a more extensive search" was appropriate. Waldrup , 331 S.W.3d at 674 ; see, e.g. , Cunningham , 193 S.W.3d at 779 (lawful search of defendant where officer noted bulge in defendant's pants' pocket that defendant attempted to conceal, he appeared nervous and his companion fled; the totality of the circumstances provided the officer a reasonable belief that defendant was involved in criminal activity and may have been armed); Gantt , 87 S.W.3d at 333-34 (lawful search where officer noticed a plastic bag sticking out of defendant's pants, defendant lied about the bag, his appearance seemed peculiar, and the encounter was at night on the side of the highway; under the totality of the circumstances, it was not an unreasonable concern that the bag might have contained a weapon).
Defendant's reliance on State v. Kelley , 227 S.W.3d 543 (Mo. App. 2007), and State v. Hensley , 770 S.W.2d 730 (Mo. App. 1989), is misplaced. Both cases are factually distinguishable as each involved a pat down in which the investigating officer felt a "type of cylinder" and knew it was not a weapon. See Kelley , 227 S.W.3d at 545 ; Hensley , 770 S.W.2d at 732. Here, the totality of the circumstances supported a belief by a reasonably prudent person that the object in Defendant's pocket was a weapon. Accordingly, the trial court did not clearly err in failing to suppress the drug evidence obtained as a result of the search. Defendant's point is denied, and the judgment of the trial court is affirmed.
NANCY STEFFEN RAHMEYER, C.J./P.J.-CONCUR
WILLIAM W. FRANCIS, JR., J.-CONCUR

All statutory references are to RSMo Noncum. Supp. (2014).

Officer Forshee described Defendant's behavior as "birdie." He explained that Defendant "was looking around, he was looking at the door, he looked over to the window. He seemed overly nervous. He seemed like he was fixing to run at any point. That's what I mean by birdie. I've seen it before. That's the opinion I got."

Officer Cook testified the hard, round object could have been a "fist pack[,]" a "ball on a chain" or "a hand grenade."

In sum, the first baggy with smaller baggies inside and the second baggy with plant material totaled: 11 bags of cocaine base; two bags of heroin; one bag of methamphetamine; and 11 bags of marijuana.

Defendant's motion argued that: (1) at the time of the intrusion into the bedroom, the officers lacked reasonable suspicion that Defendant was engaged in criminal activity; and (2) the officers did not have sufficient justification to reach into Defendant's left pocket.

While concluding that the pat down search was authorized for the officers' safety, the court decided that the search was not consensual.

Defendant's point also argues that the warrantless search was not authorized by his consent, nor justified by the "plain feel" of the drugs prior to extracting it. It is unnecessary to address either argument because the trial court did not rely on either exception. The court decided that the officer safety exception justified the search.